UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELISSA K., | |
| Plaintiff, | Case No. C20-5956-SKV |
| v. | ORDER REVERSING THE COMMISSIONER'S DECISION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Having considered the ALJ's decision, the administrative record ("AR"), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1971, has two years of college education, and previously worked as a receptionist, call center assistant supervisor, cashier checker, court clerk, temporary office worker, jewelry order filler, and stocker.  AR 257, 950.  Plaintiff was last gainfully employed in November 2013.  AR 270.

In June 2014, Plaintiff applied for benefits, with an amended alleged onset date of June 25, 2014. AR 933. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. AR 136-39, 147-56.

After ALJ Richard Geib conducted a hearing in September 2016 (AR 61-104), he issued a decision finding Plaintiff not disabled. AR 38-60. The Appeals Council denied Plaintiff's request for review (AR 1-7), but the U.S. District Court for the Western District of Washington granted the parties' stipulation to reverse the ALJ's decision and remand for further administrative proceedings. AR 1043.

On remand, ALJ Geib held hearings in December 2019 and March 2020 (AR 959-1019), and subsequently issued another decision finding Plaintiff not disabled. AR 929-58.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since the application date.

**Step two**: Plaintiff has the following severe impairments: solar urticaria/light sensitivity, obesity, fibromyalgia, peripheral neuropathy, cervical degenerative disc disease, left hand arthritis, bipolar, post-traumatic stress disorder, anxiety, borderline personality disorder.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC")**: Plaintiff can perform light work with additional limitations: she can occasionally climb ramps and stairs. She can never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently handle, finger, and feel with the left upper extremity. She should avoid concentrated exposure to extreme cold and heat, vibrations, fumes, odors, dusts, and gases. She can perform work involving simple, routine tasks, and can have occasional superficial interaction with the general public. She can have occasional interaction with co-workers and supervisors and can perform work involving only occasional changes in the work routine and setting. She can perform work in environments that do not involve direct sunlight (i.e. indirect natural lighting is

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, App. 1.

acceptable but work outside is not acceptable); and can perform work involving moderate indoor temperatures as found in office buildings.

**Step four**:  Plaintiff cannot perform past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 932-51.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 920-26.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 5.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to determine whether the error alters the outcome of the case."  *Id*.

Substantial evidence is "more than a mere scintilla.  It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

1  Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

2  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

3  must be upheld.  *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred in assessing her testimony, the medical evidence, and the lay evidence, and that these errors led to errors in the ALJ's RFC assessment and step-five findings.  Dkt. 21 at 2, 17-18.  Plaintiff also argues that if she does not prevail on any of those arguments, her case should also be remanded due to an Appointments Clause violation, under *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018).  The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

### A.   The ALJ Did Not Err in Discounting Plaintiff's Testimony

The ALJ summarized Plaintiff's allegations (AR 940) and explained that he discounted them because (1) Plaintiff's allegations as to her light sensitivity condition were inconsistent with the objective evidence and undermined by her lack of specialized treatment for this condition; (2) Plaintiff's allegations as to her fibromyalgia were unsupported by objective medical evidence and she reported improvement with medication; (3) Plaintiff's allegations as to her cervical degenerative disc disease, peripheral neuropathy, arthritis, asthma, and obesity were inconsistent with the objective medical record; (4) Plaintiff's allegations as to mental impairments were inconsistent with the at most moderate findings in the objective record and inconsistent with Plaintiff's limited mental health treatment during the adjudicated period; and (5) Plaintiff's daily activities were inconsistent with her limitations.  AR 940-47.  Plaintiff contends that the ALJ failed to provide clear and convincing reason to discount her testimony, as required in the Ninth Circuit.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff first argues that a lack of objective support for her allegations cannot alone support the ALJ's discounting of her testimony. Dkt. 21 at 14. But as detailed in the previous paragraph, the ALJ listed other reasons as well, such as improvement with treatment, limited treatment, and daily activities. Plaintiff has not shown that the ALJ erred in considering the extent to which the objective evidence corroborated her allegations, along with other reasons. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Plaintiff next argues that the ALJ's fibromyalgia-specific findings are improper under Ninth Circuit authority and Social Security Ruling ("SSR") 12-2p. Dkt. 21 at 14-15 (citing *Revels v. Berryhill*, 874 F. 3d 648, 666 (9th Cir. 2017)). Plaintiff has failed to present any argument as to how the ALJ's findings ran afoul of either *Revels* or SSR 12-2p, and the Court declines to put meat on those bones. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to address assertions unaccompanied by legal arguments: "We require contentions to be accompanied by reasons."). The ALJ reasonably contrasted Plaintiff's reports of debilitating pain and fatigue with the scant evidence of any documented pain behavior or fatigue in treatment notes, and the ALJ further noted that Plaintiff's alleged muscle weakness and difficulty walking was inconsistent with the many normal functional findings as to muscle strength and gait. AR 942. The ALJ also cited Plaintiff's reported improvement in her fibromyalgia symptoms with treatment. AR 942-43. Plaintiff has failed to show that these findings were erroneous, and the Court therefore declines to disturb them.

Plaintiff goes on to challenge the ALJ's finding that her limited mental health treatment undermined her allegation of disabling mental limitations because that is an improper inference. Dkt. 21 at 15. Plaintiff has not shown that the inference is improper under the facts of this case, however: the ALJ noted that Plaintiff would engage in short courses of therapy and then stop attending appointments, and that she did not engage in therapy at all between July 2015 and September 2018. AR 945-46. The ALJ noted that during this time period, Plaintiff obtained treatment for other conditions regularly, "which suggests she would have seen mental health providers for additional appointments if needed to manage her symptoms." AR 946. Plaintiff has not pointed to any evidence in the record suggesting that Plaintiff's sporadic treatment was the result of her mental illness or a lack of insight into her need for treatment, and thus has not shown that the ALJ improperly held her mental impairments against her. Moreover, the ALJ cited many normal mental findings in the record that are also inconsistent with Plaintiff's allegation of disabling mental impairments (AR 946), and Plaintiff did not challenge this line of reasoning. *See* Dkt. 21 at 15. Plaintiff has failed to show that the ALJ's reasons to discount her mental allegations are insufficient.

Lastly, Plaintiff challenges the ALJ's finding that her activities were inconsistent with her allegations. Dkt. 21 at 15-16. She states in conclusory fashion that none of the activities cited by the ALJ are actually inconsistent with her testimony, but fails to address the specific inconsistencies cited by the ALJ. The ALJ contrasted Plaintiff's reported inability to complete housework (AR 286) with other reports in the record where Plaintiff stated that she was able to complete housework (AR 551, 1553), and contrasted Plaintiff's reported inability to leave her home alone (AR 288) with her demonstrated ability to attend appointments by herself and attend meetings at her daughter's school (AR 1583, 1589). The ALJ also noted that although Plaintiff

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

reported that using a computer aggravated her light allergy (AR 870) and left her unable to use a computer for any length of time, she also reported spending time on a computer writing a blog (AR 611, 619, 673, 796, 914).  Plaintiff has not addressed these inconsistencies identified by the ALJ, or shown that the ALJ's interpretation of the record is unreasonable.  Because the ALJ cited substantial evidence to support his finding that at least some of Plaintiff's activities are inconsistent with some of her allegations, and Plaintiff has not shown that these findings are erroneous, the Court affirms this line of reasoning.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills').

Because the ALJ provided multiple clear and convincing reasons to discount Plaintiff's allegations, the Court affirms this portion of the ALJ's decision.

**B.     The ALJ Did Not Err in Assessing the Medical Opinion Evidence**

Plaintiff challenges the ALJ's assessment of opinions rendered by medical expert Arnold Ostrow, M.D.; examining psychologist M. Kristin Price, Ph.D.; and treating physician Penny Faires, M.D.  Plaintiff also argues that the ALJ erred in crediting the State agency opinions.  The Court will address each disputed opinion in turn.[3]

*1.     Legal Standards*[4]

Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

---

[3] Plaintiff also devotes pages of her opening brief to a summary of various medical findings, without linking that evidence to an error in the ALJ's decision. Dkt. 21 at 7-13.  The Court need not address this evidence as it does not advance Plaintiff's arguments.

[4] Because Plaintiff applied for benefits before March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 and § 416.927 apply to the ALJ's consideration of medical opinions.

1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

### 2. Dr. Ostrow

Dr. Ostrow testified at the March 2020 hearing, and the ALJ gave some weight to his testimony. AR 947, 965-81. Specifically, the ALJ discounted the limitations as to manipulative activities and light exposure that Dr. Ostrow identified, finding them inconsistent with the evidence of only mild objective findings and Plaintiff's limited treatment for the conditions causing those limitations. AR 947-48.

Plaintiff argues that the ALJ is "playing doctor" in interpreting the medical evidence and finding it inconsistent with Dr. Ostrow's opinion. Dkt. 21 at 7. The Court disagrees, because an ALJ is entitled to discount a non-examining provider's opinions with reference to medical evidence. *See, e.g.*, *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."). Plaintiff has not established error in the ALJ's assessment of Dr. Ostrow's opinion.

### 3. Dr. Price

Dr. Price examined Plaintiff in November 2016 and wrote a narrative report describing her symptoms and limitations. AR 911-15. Dr. Price opined that, *inter alia,* Plaintiff "may have issues with interpersonal relationships and authority. She would probably not be successful in working with the general public." AR 914. The ALJ discounted that portion of Dr. Price's opinion because it was "mostly based" on Plaintiff's subjective self-reports, and was inconsistent

1   with the evidence showing that Plaintiff presented with mostly normal mood, affect, and

2   behavior during appointments, and interacted appropriately with her providers. AR 949.

3         Plaintiff argues that Dr. Price's opinion regarding social limitations was informed by

4   clinical observations, rather than her self-report. Dkt. 21 at 6. Plaintiff does not point to any

5   particular findings that support that portion of Dr. Price's opinion, however, and the Court's

6   review of Dr. Price's opinion does not reveal any. Plaintiff goes on to argue that her ability to

7   interact appropriately with her providers does not necessarily prove that she could interact

8   appropriately with co-workers and supervisors (Dkt. 21 at 6-7), which may be true, but Plaintiff

9   does not show that the ALJ unreasonably interpreted the evidence as supporting his conclusion.

10  Plaintiff has failed to show that the ALJ erred in discounting the social limitations identified by

11  Dr. Price as inconsistent with the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th

12  Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's

13  opinions).

14        4.   Dr. Faires

15        Dr. Faires, Plaintiff's primary care physician, completed a form opinion in 2016

16  describing Plaintiff's physical limitations and abilities. AR 869-73. The ALJ gave this opinion

17  little weight, finding the "extreme" exertional limitations and attention/concentration deficits to

18  be unsupported by Dr. Faires' treatment notes. AR 948. The ALJ also found the physical and

19  environmental limitations to be inconsistent with the many normal or mild physical findings in

20  the record, the limited evidence of sun allergy, the evidence of improvement in certain

21  symptoms, and the mental findings indicating no more than moderate attention/concentration

22  deficits. AR 948-49. The ALJ indicated that Dr. Ostrow's opinion as to Plaintiff's exertional

23

limitations was entitled to more weight because he was able to review all of the evidence of record.  AR 949.

Plaintiff argues that the normal findings cited by the ALJ are nonetheless consistent with her fibromyalgia diagnosis (Dkt. 21 at 5), but this argument fails to grapple with the majority of the ALJ's reasoning in discounting Dr. Faires' opinion.  The ALJ listed fibromyalgia as a severe impairment at step two (AR 935), but properly went on to consider the evidence of Plaintiff's exertional limitations caused by fibromyalgia and other conditions.  AR 942-44, 948.  Furthermore, Dr. Faires' opinion addresses other limitations unrelated to fibromyalgia as well, and Plaintiff has failed to reference these lines of reasoning in the challenge to the ALJ's assessment of Dr. Faires' opinion.  For all of these reasons, Plaintiff has failed to establish harmful legal error in the ALJ's discounting of Dr. Faires' opinion as inconsistent with and unsupported by the record.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041; *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

      5.  State Agency Consultants

Plaintiff argues that the ALJ erred in crediting the State agency opinions because these were rendered years before the ALJ's decision and thus did not consider all of the evidence before the ALJ.  Dkt. 21 at 13.  The ALJ explicitly considered these opinions in light of the record, however, and Plaintiff has not shown that the opinions were contradicted by all of the remaining evidence in the record.  *See* AR 947-48.  Thus, Plaintiff has failed to establish error in the ALJ's assessment of the State agency opinions.  *See Andrews*, 53 F.3d at 1041.

  C.  **The ALJ Did Not Err in Assessing the Lay Evidence**

The record contains a third-party function report completed by Plaintiff's friend Darcy

Stice. AR 301-08. An ALJ may reject the testimony of lay witnesses only upon giving germane reasons. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.").

The ALJ noted that Ms. Stice is not an acceptable medical source, which is true, but is not a reason in itself to afford less weight to her lay statement. AR 950. The ALJ also found that Ms. Stice's statement was "generally inconsistent" with the objective medical evidence and Plaintiff's treatment history, "as discussed above." AR 950.

The ALJ's rationale for discounting Ms. Stice's opinion appears to essentially incorporate the same reasons he discounted Plaintiff's testimony. As discussed *supra*, these reasons are clear and convincing, and therefore also constitute legally sufficient reasons to discount Ms. Stice's lay statement, because it is, as Plaintiff concedes (Dkt. 24 at 8)), similar to her own testimony. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")).

### D. The Appointments Clause Violation Requires Remand[5]

Plaintiff argues the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), compels reversal in this matter. Specifically, Plaintiff argues the Commissioner ran afoul of *Lucia* by failing to assign her second hearing to a different, properly appointed ALJ. Dkt. 21 at 19; Dkt. 24 at 9. The Commissioner avers the remedy in *Lucia* is "unwarranted" because the same ALJ who rendered the first decision was properly appointed prior to rendering the second decision. Dkt. 23 at 18-19.

---

[5] Because the case is remanded on these grounds, the Court need not address Plaintiff's additional argument for remand raised for the first time on reply. *See* Dkt. 24 at 9-10.

The Court is not persuaded that the Commissioner's argument is compatible with *Lucia*. The Supreme Court held in *Lucia* that Securities and Exchange Commission ALJs were "Officers of the United States" under the Constitution and therefore must be appointed in accordance with the Constitution. *Lucia*, 138 S. Ct. at 5053-54. The Court found that all decisions issued by ALJs who were not properly appointed must be reversed and remanded, to be heard by a different, properly appointed ALJ. *Id.* at 2055.

Shortly after *Lucia* was decided, the Commissioner issued SSR 19-1p, which set forth a procedure for timely Appointments Clause challenges:

> When the Appeals Council grants review based on a timely-raised Appointments Clause challenge, [Administrative Appeals Judges] who have been appointed by the Acting Commissioner (or whose appointments the Acting Commissioner has ratified) will vacate the hearing decision or dismissal. **In cases in which the ALJ made a decision, the Appeals Council will conduct a new and independent review of the claims file and either remand the case to an ALJ other than the ALJ who issued the decision under review, or issue its own new decision about the claim covering the period before the date of the ALJ's decision**. In its review, the Appeals Council will not presume that the prior hearing decision was correct.
>
> The Appeals Council will either **remand the case to a different ALJ**; issue a new, independent decision; or, as appropriate, issue an order dismissing the request for a hearing.
>
> In cases in which the ALJ dismissed a request for a hearing, the Appeals Council will vacate the ALJ's dismissal order. It will then either: (1) Decide whether the request for a hearing should be dismissed, or (2) **remand the case to another ALJ to determine that issue.**

*See* SSR 19-1p, 2019 WL 1324866, *3 (Mar. 15, 2019) (emphasis added).

*Lucia* identifies two prerequisites to remedying an "adjudication tainted with an appointments violation." 138 S. Ct. at 2055. *First*, a claimant must receive a "new hearing before a properly appointed official." *Id*. (cleaned up). *Second*, "that official" cannot be the same ALJ, "even if he has by now received (or receives sometime in the future) a constitutional

1 | appointment." *Id*. "To cure the constitutional error, another ALJ … must hold the new hearing"
2 | to which a claimant is entitled. *Id*. Here, only the first condition was met.

3 | The Commissioner concedes ALJ Geib was improperly appointed at the time of the first
4 | hearing. Dkt. 23 at 18. The Commissioner contends, however, ALJ Geib's subsequent
5 | ratification of appointment, prior to the second hearing, remedied the first hearing's
6 | constitutional defect. *Id.* The Commissioner's position is in tension with the *Lucia*'s instruction
7 | that an Appointments Clause violation should be remedied by a new hearing and "*another* ALJ
8 | … *must* hold the new hearing[.]" *Lucia*, 138 S. Ct. at 2055 (emphases added). Thus,
9 | irrespective of his appointment status at the time of the second hearing, ALJ Geib's participation
10 | in Plaintiff's administrative case continued — rather than cured — the constitutional violation
11 | attendant to the first hearing. *See id.* ("Judge Elliot has already both heard Lucia's case and
12 | issued an initial decision on the merits. He cannot be expected to consider the matter as though
13 | he had not adjudicated it before."). Because Plaintiff's second hearing violated *Lucia*'s mandate,
14 | it did not, as the Commissioner argues, cure the first hearing's constitutional defect.

15 | The Court finds that "to cure the constitutional error," the Commissioner's final decision
16 | must be reversed and remanded, and "another ALJ … must hold the new hearing." *Id.*; *accord*
17 | *Welch v. Comm'r of Social Sec.*, 2021 WL 1884062 (S.D. Ohio May 11, 2021).
18 | //
19 | //
20 | //
21 | //
22 | //
23 | //

ORDER REVERSING THE COMMISSIONER'S
DECISION - 13

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings before a different ALJ under sentence four of 42 U.S.C. § 405(g).

Dated this 29th day of September, 2021.

S. KATE VAUGHAN
United States Magistrate Judge